United States District Court
Southern District of Texas

**ENTERED**

November 18, 2025

Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| EDWARD FLORES, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 2:25-cv-00162 |
| | § | |
| ARANSAS COUNTY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

This case has been referred to United States Magistrate Judge Mitchel Neurock for case

management and recommendations on dispositive matters, *see* 28 U.S.C. § 636, but with Judge

Neurock's consent and in accordance with Special Order C-2023-1,[1] United States Magistrate

Judge Jason B. Libby enters the following.

Plaintiffs Edward and Beatrice Flores filed this civil rights action under 42 U.S.C.

§ 1983. (Doc. No. 1.) They brought the lawsuit on behalf of the estate of Lewis Flores

("Lewis"), their son. *Id.* at 1-2. Plaintiffs' lawsuit raises claims against Aransas County, Texas

(the "County") and two of its employees: Aransas County Attorney Amanda Oster ("County

Attorney Oster") and Director of Animal Care ("Animal Control") Caitlan Frazier ("Director

Frazier") (collectively, "Defendants"). *Id.* at 4-5. Plaintiffs' claims against County Attorney

Oster and Director Frazier are raised against them in their official capacity. *Id.* at 5.

---

[1] Special Order C-2023-1 is a standing order concerning civil matters referred to magistrate judges in this division.
The order allows magistrate judges to assist each other on any referred matter by agreement, including entering
orders, notices, recommendations, and presiding over judicial proceedings.

Plaintiffs' claims arise from the death of Lewis. (Doc. No. 1, pp. 1-5.) They allege that Aransas County, County Attorney Oster, and Director Frazier violated Lewis' constitutional rights by failing to contain what Plaintiffs describe as a pack of "loose, aggressive dogs" "at large." *Id.* at 5. For the reasons discussed below, the undersigned recommends that Defendants' motion to dismiss (Doc. No. 12) be GRANTED.

### A. Proceedings and background.

Plaintiffs filed their complaint on June 20, 2025. (Doc. No. 1.) Defendants timely filed a motion to dismiss Plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 12.) In the same document, Defendants also moved to strike certain photographs contained in the complaint, under Federal Rule of Civil Procedure 12(f). *Id.* Plaintiffs responded to the motions (Doc. No. 20), and Defendants filed a reply. (Doc. No. 21.)

### B. Plaintiffs' allegations, legal claims, and requested relief.

#### 1. Plaintiffs' allegations.

Plaintiffs allege that Lewis was attacked and killed by a pack of five dogs on Monkey Road in Rockport, Texas. (Doc. No. 1, p. 5.) While walking to work, Lewis was allegedly surprised by the pack; a call for help was made by a passerby, and police responded to the scene. *Id.* Lewis succumbed to his injuries after being transported to the hospital. *Id.*

Plaintiffs claim that "[t]he Aransas County Sheriff's Office and the Aransas County Animal Control staff had actual notice that the area of Monkey Road had an ongoing problem with loose, aggressive dogs." (Doc. No. 1, p. 5.) Defendants had notice, Plaintiffs claim, because "the Aransas County Sheriff and Aransas County Animal Control received dozens of calls" regarding aggressive dogs, bites, and animals at large, near the location where Lewis was attacked. *Id.*

2 / 23

Plaintiffs allege that Defendants' failure to address these calls amounted to "deliberate indifference to the safety and welfare of the public," including Lewis. (Doc. No. 1, p. 7.) This deliberate indifference, Plaintiffs claim, violated Lewis' Fourteenth Amendment rights. *Id.* at 8-9.

### 2. *Plaintiffs' legal claims and requested relief.*

Plaintiffs assert six causes of action in their complaint.

#### a. *Count 1 – Fourteenth Amendment substantive and procedural due process.*

In Count 1, Plaintiffs allege a violation of Lewis' Fourteenth Amendment procedural and substantive due process rights by all Defendants. (Doc. No. 1, p. 8.) Plaintiffs claim that the County "was deliberately indifferent to the known dangers posed by the dogs, resulting in a violation" of Lewis' due process rights. *Id.* at 8-9. And because Defendants knew about the history of the dog attacks, Plaintiffs allege that the County deprived Lewis of his "right to be free from undue harm and danger." *Id.* at 9. Plaintiffs also allege that Lewis' procedural due process rights were violated because the County was obliged to follow "fair and transparent procedures" in addressing complaints regarding loose dogs. *Id.*

#### b. *Count 2 – Fourteenth Amendment equal protection.*

In Count 2, Plaintiffs allege a violation of Lewis' Fourteenth Amendment equal protection rights by all Defendants. (Doc. No. 1, p. 10.) Plaintiffs claim that "[t]he County disproportionately refused to apply statutory protections to individuals on the south-side of Rockport, which is largely comprised of low-income families." *Id.* at 10. Plaintiffs allege that this unequal treatment led to Aransas County's failure to properly contain dogs that were in that area. *Id.* at 10. And by "diverting critical resources away from this low-income area" and using

them in higher-income neighborhoods, Plaintiffs allege that Lewis and others on the south side

of Rockport were discriminated against. *Id.* at 10-11.

### c. Count 3 – Monell: *failure to train and supervise.*

In Count 3, Plaintiffs allege, under a *Monell* theory of liability,[2] that the County has

"inadequate policies of training and supervising Animal Control officers and officials regarding

the handling of dangerous animals." (Doc. No. 1, p. 11.) Under Plaintiffs' theory, the County's

unofficial policies, customs, and practices led to insufficient training in spotting dangerous dogs

and how to handle complaints about those dogs. *Id.* at 11-12. Additionally, these unofficial

policies, customs, and practices resulted in a failure to properly supervise the officers in charge

of handling complaints about loose animals. *Id.*

### d. Count 4 – Monell: *failure to protect.*

In Count 4, Plaintiffs allege, through another *Monell* claim, that Aransas County had a

duty to protect Lewis from the acts and omissions of Aransas County Animal Control. (Doc. No.

1, p. 12.) Plaintiffs claim that the County has inadequate policies, customs, and practices in

place for protecting "all individuals equally" from "dangerous animals." *Id.* at 13. Plaintiffs

claim that these policies proximately caused Lewis' death. *Id.* Additionally, Plaintiffs allege

that the "governmental policy-makers" knew of the existence of these policies, and that the

policies served as the moving force behind the alleged constitutional violations. *Id.*

### e. Count 5 - wrongful death and survival.

In Count 5, Plaintiffs allege a survival claim on the basis that Lewis would have been

able to bring this suit himself had he survived. (Doc. No. 1, pp. 13-14.) Plaintiffs further allege

that Lewis' "death resulted from the County's willful acts or omissions as described herein or

---

[2] *See Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978).

from Defendants' gross malfeasance." *Id.* at 14. They bring the claim under Texas law. *See* Tex. Civ. Prac. & Rem. Code §§ 71.021, 71.002(b).

### *f.  Count 6 – State-created danger.*

In their sixth claim, Plaintiffs allege that "Defendants' failure to properly investigate, classify, and manage the dangerous dogs constitutes a violation of Plaintiffs' due process rights." (Doc. No. 1, p. 14.) Further, Plaintiffs contend that Defendants "created and enhanced" the danger posed to Lewis by failing to respond to the reports of dangerous animals, failing to capture the dogs, and failing to classify the dogs as dangerous. *Id.* at 15. Plaintiffs list several measures in their complaint that they believe the County should have taken to prevent loose dog attacks, and they allege that "[a]ny and all of these measures would have prevented the incident from occurring." *Id.* To Plaintiffs, the County's failure to take these steps proximately caused Lewis' death. *Id.*

### *3.  Requested relief.*

Plaintiffs request compensatory and punitive damages, along with attorneys' fees. (Doc. No. 1, pp. 16-17 ¶ 44-45.) They also seek an injunction directing the County to "comply with proper procedures for managing dangerous animals." *Id.* at 16 ¶ 40.

### *C.  The dismissal motion, the response, and the reply.*

### *1.  Defendants' motion.*

Defendants move to dismiss Plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 12.) Defendants first argue that Plaintiffs' complaint should be dismissed because "they have not alleged any facts pertaining to the actions of any of the Defendants which amount to an actual constitutional violation." *Id.* at 4. They further argue that Plaintiffs' claims do not identify a cognizable constitutional right because they "are not aware" of any

constitutional duty to have policies in place that prevent attacks from dogs owned by "private" people. *Id.* at 5. These failures to allege pertinent facts and constitutional claims, Defendants argue, result in a failure to satisfy the pleading requirements in Federal Rule of Civil Procedure 8(a). *Id.*

Defendants' second argument is that Plaintiffs fail to properly allege causation. (Doc. No. 12, p. 6-7.) Citing Texas case law, Defendants argue that even if the County or Animal Control had policies in place relating to preventing dog attacks, Lewis could still have been attacked. *Id.* at 7. Because the policies would not have prevented Lewis' injuries, Defendants claim, Plaintiffs' theory of causation is too speculative to prevail. *Id.*

Third, Defendants argue that the claims against County Attorney Oster and Director Frazier are duplicative and should be dismissed. (Doc. No. 12, p. 7-8.) Plaintiffs' complaint raises claims against County Attorney Oster and Director Frazier in their official capacity, Defendants argue, making them duplicative of their claims against Aransas County. *Id.*

But even if the claims against those defendants are not dismissed for that reason, Defendants' fourth argument is that County Attorney Oster is entitled to absolute immunity from suit because her involvement in policing the dogs would have been in her prosecutorial role. *Id.* at 8. Defendants raise a similar argument in their fifth point, that the Aransas County's Sheriff's Department and Animal Control are immune to suit because they are not legal entities capable of being sued.[3]

Turning to Plaintiffs' *Monell* claims, Defendants argue that Plaintiffs' claims are conclusory and not supported by facts. (Doc. No. 12, pp. 11-13.) They further attack Plaintiffs'

---

[3] Plaintiffs have not named Aransas County Animal Care or the Aransas County Sheriff's Department as defendants. *See* Doc. No. 1, p. 1. Instead, they sue the County as the "policy makers vested with the authority to make policy within the Animal Care Services Department." *Id.* at 4.

Fourteenth Amendment claims by arguing that there is no due process right to protection from private harms. *Id.* at 14. Neither, Defendants argue, have Plaintiffs properly identified a policy that suggests that Aransas County disproportionately addressed animal complaints based on socioeconomic status in violation of Lewis's equal protection rights. *Id.* at 14-15.

Defendants also argue that Plaintiffs' failure-to-train claims fail because their actions or inactions did not amount to deliberate indifference, as required by Supreme Court precedent. (Doc. No. 12, pp. 15-17) (citing *City of Canton v. Harris*, 489 U.S. 378 (1989)). Defendants further assert that Plaintiffs' failure-to-protect claims fail because *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), precludes a municipality's duty to protect citizens absent a special relationship. *Id.* at 17-18. Accordingly, Defendants argue, no special relationship with Lewis existed. *Id.*

Defendants also argue that Plaintiffs' state-created danger claims must fail because such a theory is not recognized in the Fifth Circuit. (Doc. No. 12, p. 18) (citing *Fisher v. Moore*, 73 F.4th 367, 372 n.13 (5th Cir. 2023)). And even if such a theory did exist, Defendants argue, it would fail because Plaintiffs have not identified any state actor who knowingly put Lewis in danger. (Doc. No. 12, p. 18) (citing *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 855-56 (5th Cir. 2012)).

Finally, Defendants move to strike the photos of the dogs on pages 6 and 7 of Plaintiffs' complaint. (Doc. No. 12, pp. 18-19.) Defendants argue that Plaintiff does not claim that the pictured dogs are the dogs that attacked Lewis, and thus that the photos are immaterial to the case. *Id.* at 19.

### 2. *Plaintiffs' response.*

Plaintiffs timely responded to Defendants' motion. (Doc. No. 20.) Plaintiffs start their response by addressing Defendants' arguments that no right exists to be safe from dog attacks. *Id.* at 3. Plaintiffs argue that this misstates their position, and that the violation of rights they are alleging is based on the Equal Protection Clause. *Id.* The constitutional violation occurred, Plaintiffs argue, through the County's diversion of resources, "including those necessary for Animal Care to properly perform necessary, basic, life-saving functions," away from the south side of Rockport. *Id.* To Plaintiffs, using those resources in more prosperous areas amounts to a violation of Lewis' equal protection rights. *Id.* Notably, however, Plaintiffs do not comment on Defendants' arguments regarding the existence of a constitutional right to be free from attacks by loose dogs. *See id.*

Responding to Defendants' *Monell* arguments, Plaintiffs argue that they properly alleged a policy or custom because they pointed to the County's failure to respond to dozens of calls for service preceding the attack on Lewis. (Doc. No. 20, p. 4.) And because the Aransas County Animal Control office was in charge of handling those calls and complaints, Plaintiffs argue that it is the final policymaker in not responding to such calls. *Id.*

Turning to their claims brought under Texas law, Plaintiffs first argue that the Court should consider their wrongful death claim. (Doc. No. 20, p. 5.) This is the case, they argue, because the "County was aware of the aggressive, dangerous, and deadly dogs," yet Defendants "failed to respond appropriately and perform the job widely known and accepted tasks" that allegedly would have prevented Lewis' death. *Id.*

Plaintiffs argue that the Court should consider its state-created danger argument because it "remains an open question before the Fifth Circuit," as established by *Fisher v. Moore*. (Doc.

8 / 23

No. 20, p. 6.) Alleging that an "overwhelming circuit consensus" exists, Plaintiffs believe there is a "good faith basis for extending, modifying, or reversing existing law and wishes to preserve this matter for further review on appeal, if necessary." *Id.*

Plaintiffs lastly contend that the Court should not strike the photos in their complaint, as the photos "demonstrate that the County was well aware of the dangerous and loose dog" problem. (Doc. No. 20, p. 9.)

### *3. Defendants' reply.*

In their reply (Doc. No. 21), Defendants repeat their argument that Plaintiffs' complaint failed to properly allege causation "because it is too speculative to conclude that simply not spending enough money in the area" where Lewis was allegedly attacked constituted an equal protection violation. *Id.* at 1.

Defendants also reiterate their objections to the inclusion of County Attorney Oster and Director Frazier in the lawsuit, specifically refuting Plaintiffs' claims that they were involved in the funding decisions for Animal Control. (Doc. No. 21, p. 2.) Instead, Defendants argue, Aransas County Commissioners set the budget, not County Attorney Oster or Director Frazier. *Id.* Relatedly, Defendants argue that Plaintiffs fail to overcome County Attorney Oster's presumption of absolute immunity, and that she therefore should be immune from suit. *Id.*

Lastly, Defendants reiterate their position that Plaintiffs failed to properly allege a state-created danger claim in their complaint. (Doc. No. 21, p. 3.) Defendants argue that the County had no special relationship with Lewis, and that Plaintiffs did not properly allege causation, so there were no foreseeable injuries that could have established a state-created danger claim. *Id.* at 3-4.

### D. *Legal standards governing the motion to dismiss.*

When considering a motion for dismissal under Federal Rule of Civil Procedure 12(b)(6), a reviewing court must determine whether the plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff must plead those facts specifically enough to raise a right to relief that exceeds mere speculation. *See id.* at 555. The facial plausibility standard is met when a plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This does not require the plaintiff to demonstrate probability, but the plaintiff must allege something more than a sheer possibility that a defendant has acted unlawfully. *See id.*

Reviewing courts are to accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *See Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). But legal conclusions are not entitled to such acceptance, nor are threadbare recitals of elements of a cause of action supported by mere conclusory statements. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Conclusory allegations and unwarranted deductions of fact are not accepted as true: the plaintiff must plead "'specific facts, not mere conclusory allegations' to state a claim for relief that is facially plausible." *See Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 305 (5th Cir. 2020) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994)). Legal conclusions masquerading as factual conclusions likewise will not suffice to prevent the granting of a motion to dismiss. *See Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).

### *E. Analysis.*

#### *1. The official-capacity defendants should be dismissed.*

The district court should dismiss Plaintiffs' claims against County Attorney Oster and

Director Frazier in their official capacities. A suit against a government official in his or her

official capacity is a suit against that official's office, and it is no different from a suit against the

governmental unit that employs that individual. *See Will v. Michigan Dep't of State Police*, 491

U.S. 58, 71 (1989). An official-capacity suit generally represents only another way of pleading

an action against an entity of which an officer is an agent. *See Monell*, 436 U.S. at 690 n.55.

Here, Plaintiffs are suing the County directly while asserting the same claims against

County Attorney Oster and Director Frazier in their official capacities. Plaintiffs' official-

capacity claims are therefore duplicative and should be dismissed with prejudice as to those

individual defendants. *See Savage v. Harris Cnty., Tex.*, Civ. No. 4:24-CV-0666, 2025 WL

1697619, at *10 (S.D. Tex. June 17, 2025) (Ellison, J.); *Harville v. Texas A&M Univ.*, 833 F.

Supp. 2d 645, 659 n.8 (S.D. Tex. 2011) (Hoyt, J.).

#### *2. The district court should dismiss the due process and failure-to-protect claims.*

Plaintiffs allege violations of Lewis' substantive and procedural due process rights under

the Fourteenth Amendment. (Doc. No. 1, pp. 9-11.) Plaintiffs' Fourteenth Amendment due

process claims (Count 1) and their failure-to-protect claim (Count 4) should be dismissed

because Plaintiffs fail to plausibly allege that Lewis had a right to be protected from dogs that

did not belong to or were controlled by the County.

The Due Process Clause provides: "No State shall … deprive any person of life, liberty,

or property, without due process of law." U.S. Const., amend. XIV, § 1. "Procedural due

process requires the government to follow appropriate procedures before it deprives a person of

11 / 23

an interest in life, liberty, or property; substantive due process ensures that, regardless of the

fairness of the procedures used, the government does not use its power for oppressive purposes."

*Patterson v. Def. POW/MIA Acct. Agency*, 398 F. Supp. 3d 102 (W.D. Tex. 2019) (citing *Daniels*

*v. Williams*, 474 U.S. 327, 331 (1986)).

Here, Plaintiffs' claims do not plausibly allege a violation of Lewis' procedural or

substantive due process rights. The Due Process Clause does not generally require the

government to protect its citizens from the acts of private actors. *See McKinney v. Irving Indep.*

*Sch. Dist.*, 309 F.3d 308, 312 (5th Cir. 2002) (citing *DeShaney*, 489 U.S. at 195 ("nothing in the

language of the Due Process Clause itself requires the State to protect the life, liberty, and

property of its citizens against invasion by private actors")); *see also Kovacic v. Villarreal*, 628

F.3d 209, 213 (5th Cir. 2010); *Williby v. City of Oakland*, 357 F. App'x 880, 881-82 (9th Cir.

2009) (affirming summary judgment against plaintiff who alleged that city violated his due

process rights by failing to respond adequately to his request for assistance after being attacked

by a dog).

Rather, the Due Process Clause "is phrased as a limitation on the State's power to act, not

as a guarantee of certain minimal levels of safety and security." *DeShaney*, 489 U.S. at 195.  So,

while the clause forbids states from depriving individuals of life, liberty, or property without due

process of law, it does not "impose an affirmative obligation on the [s]tate[s] to ensure that those

interests do not come to harm through other means." *Id.*  In other words, although there is a

"recognized substantive due process right for individuals to be free from bodily harm caused by

the state," there is "no constitutional duty that requires state officials to protect persons from

private harms." *Kovacic*, 628 F.3d at 213 (5th Cir. 2010) (citing *DeShaney*, 489 U.S. at 196-97).[4]

In *Jaramillo v. City of McAllen, Texas*, 306 F. App'x 140 (5th Cir. 2009) (per curiam), the Fifth Circuit held that a municipality's failure to enforce an animal control ordinance regarding loose dogs was not a violation of the Due Process Clause. There, the plaintiff alleged a due process violation against the city for not enforcing an animal control ordinance against a resident's dog that the city allegedly knew to be violent. *Id.* at 142. The plaintiff alleged that this failure to address the recurring problem created a custom and policy of maliciously and intentionally creating dangers of injury and death. *Id.* The Fifth Circuit rejected the plaintiff's claims because she did not allege that the city intentionally injured her or knew that there was a specific risk of injury to her; thus, the state was not required to prevent any attacks in the first place. *Id.* at 142-43 (citing *Saenz v. Heldenfels Bros. Inc.*, 183 F.3d 389 (5th Cir. 1999)). This case presents an even weaker situation for Plaintiffs than in *Villarreal*, for Plaintiffs do not cite any specific ordinance or other law that any county official failed to enforce.

The only recognized exception to this general rule in this circuit obliges the state to protect individuals from known threats of harm by private actors where a "special relationship" exists between the individual and the state, such as for people who are involuntarily confined or restrained against their will pursuant to governmental order or by the affirmative exercise of state power. *See McKinney*, 309 F.3d at 313 (citing *Walton v. Alexander*, 44 F.3d 1297, 1299 (5th Cir. 1995)). That narrow exception does not exist here, as Lewis was living in the free world and

---

[4] The Fifth Circuit does not recognize "state-created danger" as an exception to this rule. That topic is discussed further below.

was not a prisoner or otherwise confined by the state. The district court should therefore conclude that Plaintiffs fail to plausibly allege a viable due process claim.

Plaintiffs' failure-to-protect claim (Count 4) suffers from the same malady as their due process claims. Plaintiffs allege that the County had a duty to protect Lewis "from the acts and omissions of its Animal Control officers, which violated [Lewis'] constitutionally protected rights …." (Doc. No. 1, p. 12-13 ¶¶ 27-28.) Because the law recognizes no such duty, Plaintiffs' failure-to-protect claim should be dismissed as well.

### 3. *The district court should dismiss the equal protection claim.*

Plaintiffs' Fourteenth Amendment equal protection claim (Count 2) is likewise subject to dismissal.

To successfully plead an equal protection violation, a plaintiff must present factually supported allegations that (1) "he was treated differently than persons similarly situated to him," and (2) "that such treatment stemmed from discriminatory intent." *Taylor v. Johnson*, 257 F.3d 470 (5th Cir. 2001) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985)). Discriminatory intent requires a showing that "the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Lavernia v. Lynaugh*, 845 F.2d 493, 496 (5th Cir. 1988).

In their complaint, Plaintiffs contend that the County "disproportionately refused to apply statutory protections to individuals on the south-side of Rockport." (Doc. No. 1, p. 10 ¶ 19.) The County also allegedly "diverted necessary resources, including those necessary for [Animal Control], to properly perform its functions, away from this economically disadvantaged community," instead directing those "resources" to more affluent areas of town. *Id.*

Plaintiffs' allegations do not plausibly allege an equal protection violation. First, Plaintiffs do not identify what "statutory protections" they mean – they do not claim that there is any statute that required the County to provide resources to afford protection from loose dogs. And Plaintiffs' allegation of diversion of resources is conclusory: through facile phrasing, they contend that the south side of Rockport generally received less in the way of resources than other areas of Rockport – not that the County deliberately redirected animal control funding away from the south side to other locales. *See* Doc. No. 1, p. 10 ¶ 19.  Second, even if Plaintiffs had made an allegation about animal control funding, they fail to identify with specificity what resources (type or amount) were expended for the benefit of more affluent areas of Rockport that were not also expended for the benefit of Rockport's south side.  And Plaintiffs further fail to allege, much less plausibly allege, how any difference in the quantity or type of resources expended, without more, resulted in any difference in treatment – that the County responded to complaints about loose dogs in other locales while ignoring them on the south side of Rockport.

Finally, Plaintiffs fail to make any plausible allegation of discriminatory intent – that any policymaker decided to single out the south side of Rockport for different treatment with the intent of causing an adverse effect for people on the south side.  The district court should therefore dismiss Plaintiffs' equal protection claim. *Cf. Williby*, 357 F. App'x at 882 (affirming summary judgment against plaintiff who claimed equal protection violation because he failed to raise triable issue whether he was treated differently from similarly situated persons).[5]

---

[5] Although *Williby* was a summary judgment case, it is nonetheless apt here because it demonstrates that a plaintiff must both plausibly allege and then prove intentionally different treatment in the context of failure to respond to a request for the city's assistance from a dog attack.

### *4. The district court should dismiss the* **Monell** *claims.*

Plaintiffs raise two *Monell* claims (Counts 3 and 4). The district court should dismiss both.

To establish *Monell* liability, "a plaintiff must show that an official policy promulgated by a municipal policymaker was the moving force behind the violation of a constitutional right." *Henderson v. Harris Cnty., Texas*, 51 F.4th 125, 130 (5th Cir. 2022) (per curiam) (citing *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009)); *see also Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001). A plausible *Monell* allegation must identify "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)). Isolated unconstitutional actions by municipal employees will almost never trigger municipal liability. *See Winegarner v. City of Irving Tex.*, No. 3:24-cv-02171, 2025 WL 2608241, at *3 (N.D. Tex. Aug. 20, 2025), *adopted*, 2025 WL 2606991 (N.D. Tex. Sept. 8, 2025) (citing *Piotrowski*, 237 F.3d at 578).

*Monell*'s "policy" requirement recognizes the possibility of unofficial policies, but those must "be in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009). When the municipal actors are not policymakers, a "pattern of conduct" showing both similarity and specificity must be plausibly alleged, and "cannot be conclusory; it must contain specific facts." *See Winegarner*, 2025 WL 2608241, at *3 (quoting *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010) and *Pena v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (cleaned up)).

16 / 23

To survive a dismissal motion, then, a plaintiff's complaint must contain non-conclusory "specific facts" describing "a policy or custom and its relationship to the underlying constitutional violation." *Henderson*, 51 F.4th at 30 (quoting *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018)). "Every *Monell* claim requires an underlying constitutional violation," *Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 808 (5th Cir. 2017), so a *Monell* claim cannot proceed without a "predicate constitutional violation." *Loftin v. City of Prentiss, Miss.*, 33 F.4th 774, 783 (5th Cir. 2022) (citing *Garza v. Escobar*, 972 F.3d 721, 734 (5th Cir. 2020) (cleaned up)).

Here, Plaintiffs' first *Monell* claim (Count 3) alleges that the County has an unofficial policy or custom of failing to train and supervise its officers on how to properly handle dangerous dogs. (Doc. No. 1, p. 11.) Plaintiffs' second *Monell* claim (Count 4) alleges that the County had an unofficial policy or custom of failing to protect individuals like Lewis. (Doc. No. 1, pp. 12-13.) But as discussed above, Plaintiffs have failed to plausibly allege either due process or equal protection violations. Because there is no plausible allegation of a "predicate constitutional violation," there is likewise no plausible allegation of a *Monell* violation, and so the district court should dismiss Plaintiffs' *Monell* claims. *See Loftin*, 33 F.4th at 783; *Zinsou v. Fort Bend Cnty.*, No. 22-20423, 2023 WL 4559365, at *3 (5th Cir. July 17, 2023) (quoting *Whitley v. Hanna*, 726 F.3d 631, 648 (5th Cir. 2013) ("every *Monell* claim 'fail[s] without an underlying constitutional violation'")).

Plaintiffs' *Monell* claims also fail because they are inadequately pleaded. Failure-to-train theories can form a legitimate basis for municipal liability under *Monell*, *see Hutcheson v. Dallas Cnty.*, 994 F.3d 477, 482 (5th Cir. 2021), but to establish liability on such a theory a plaintiff must prove that "(1) the city failed to train or supervise the officers involved; (2) there is a causal

17 / 23

connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Henderson*, 51 F.4th at 30 (quoting *Hutcheson*, 994 F.3d at 477) (cleaned up)). Here, Plaintiffs have failed to allege a custom or policy that would establish municipal liability under *Monell*: while Plaintiffs allege instances of calls made regarding dangerous dogs on Monkey Road, they do not explain how the alleged failure to answer these calls gave rise to a pattern, policy, or unofficial custom sufficient to impose municipal liability. *Cf. Savage*, 2025 WL 1697619 at *10 ("Although Plaintiff broadly alleges numerous similar incidents of Jail officials failing to protect detainees, she does not provide any factual detail to establish a plausible pattern."); *Carson v. Cnty. of Warren, Miss.*, No. 3:21-CV-593, 2023 WL 9120471, at *8 (S.D. Miss. June 23, 2023) ("[Plaintff] only alleges Defendants acted pursuant to a policy or custom in failing to protect him and does not otherwise explain, with specific facts, that Warren County has a policy of failing to protect inmates.").

This case resembles *Najera v. City of San Antonio*, No. 5:24-CV-01005 (W.D. Tex.). There, the plaintiffs' decedent was allegedly killed by a pair of dogs that had already been impounded following several other attacks. *Najera*, Doc. No. 24 (Jan. 10, 2025) (second amended complaint, attached as Appendix A). Despite allegedly having knowledge of the dogs' violent history, the City's Animal Control Department released the dogs to their owner, and the dogs got loose and killed the decedent after their release. *Id.* at 4-6. Nonetheless, the district court dismissed plaintiffs' complaint for failing to plausibly allege a constitutional violation. *See Najera*, Doc. No. 36, pp. 4-6 (dismissal order, attached as Appendix B). Even though the City of San Antonio and its Animal Control Department allegedly had knowledge that those specific dogs had been violent (an allegation not leveled by Plaintiffs in this case), the district court still

found no underlying constitutional violation and dismissed the *Monell* claims. *Id.* at 4. That there had been prior complaints and impoundment did not change the fact that the defendants did not "use [their] power for oppressive purposes" or treat the decedent differently than similarly situated individuals by releasing the dogs and failing to protect the decedent from them. *Id.* (cleaned up).

Plaintiffs have not properly alleged *Monell* claims under their theory of failure to train and supervise or failure to protect. Accordingly, the district court should dismiss the *Monell* claims (Counts 3 and 4).

### 5. The district court should dismiss the wrongful death claim.

Plaintiffs attempt to bring a wrongful death and survivorship claim brought under section 71.002(b) of the Texas Civil Practice and Remedies Code (Count 5). Texas' wrongful death statute provides that "[a] person is liable for damages arising from an injury that causes an individual's death if the injury was caused by the person's or his agent's or servant's wrongful act, neglect, carelessness, unskillfulness, or default." *Id.*

A plaintiff suing under this statute in federal court generally would need to satisfy the requirements of 28 U.S.C. § 1367(a) for supplemental jurisdiction in federal question cases. *See Rodgers v. Lancaster Police & Fire Dep't*, 819 F.3d 205, 208 (5th Cir. 2016). But federal question jurisdiction is extended by incorporating state wrongful-death statutes, so "an individual may bring a claim under federal civil-rights laws through Texas's wrongful-death statute." *Id.* (quoting *Rhyne v. Henderson Cty.*, 973 F.2d 386, 391 (5th Cir.1992)). This includes claims brought under 42 U.S.C. § 1983. *See id.* at 209 (citing *Grandstaff v. City of Borger, Tex.*, 767 F.2d 161, 172 (5th Cir. 1985)).

In *Slade v. City of Marshall, Texas,* the Fifth Circuit held that plaintiffs seeking to recover on a wrongful death claim under § 1983 must prove both the underlying constitutional violation and the causal link between that violation and the defendant's conduct. 814 F.3d 263, 265 (5th Cir. 2016) (quoting *Phillips ex rel. Phillips v. Monroe County,* 311 F.3d 369, 374 (5th Cir. 2002)). Further, a plaintiff must show that the defendant's wrongful actions "more likely than not caused the death," not just that they reduced the deceased's chance of survival. *Id.* at 264-65 n.2 (quoting *Kramer v. Lewisville Mem'l Hosp.,* 858 S.W.2d 397, 404 (Tex. 1993)).

Plaintiffs' complaint makes plain that their wrongful death claim is based solely on the alleged constitutional violations they level in Counts 1 through 4 under § 1983. *See* Doc. No. 1, p. 13 ¶ 31 ("[Lewis] died as a result of the County's wrongful conduct explained herein. … The County's conduct that caused [Lewis'] death was a producing cause of injury to Plaintiffs, which resulted in damages …."). To prevail on their wrongful death claim, then, Plaintiffs were required to plausibly allege an underlying constitutional violation. As discussed, they have failed to do this, so their wrongful death claim (Count 5) should be dismissed as well.[6]

### 6. *The district court should dismiss the state-created danger claim.*

Plaintiffs' final claim (Count 6) is based on a "state-created danger" theory and alleges that Defendants "created and enhanced" the danger posed to Lewis by failing to respond to the reports of dangerous animals, failing to capture the dogs, and failing to classify the dogs as dangerous. (Doc. No. 1, pp. 15-16.) The district court should dismiss this claim.

---

[6] To the extent Plaintiffs attempt to raise a survival "claim" as a separate cause of action, it cannot proceed. Texas' survival statute does not create a new cause of action, unlike its wrongful death statute. The survival statute merely allows a personal injury suit to survive the death of the injured party, allowing the suit to be prosecuted as if the decedent were still alive. *See Nuncio v. Webb Cnty.,* No. 5:20-CV-92, 2021 WL 4442518, at *2 n.1 (S.D. Tex. Sept. 28, 2021) (Garcia Marmolejo, J.) (citing *Pack v. Crossroads, Inc.,* 53 S.W.3d 492, 515 (Tex. App. – Fort Worth 2001, pet. denied)) (noting that survival actions are not technically "claims" and do not form an additional basis for liability).

As discussed, the general rule is that the state does not have a duty to protect individuals from private violence. *See DeShaney*, 489 U.S. 189 at 197. Some other circuits have recognized an exception to this general rule; under that additional exception, a state actor who knowingly places a citizen in danger may be accountable for foreseeable injuries that result. *See Fisher*, 73 F.4th at 372 (citing, as an example, *Gregory v. City of Rogers, Ark.*, 974 F.2d 1006, 1010 (8th Cir. 1992) *(en banc)*). The state-created danger doctrine, however, has never been recognized in this circuit. Additionally, the United States Court of Appeals for the Fifth Circuit has indicated that the theory, if adopted, would likely require a plaintiff to show that the defendants used their authority to create a dangerous environment for the plaintiff, one that would not otherwise have existed for the third party's crime to occur. *See id.* (citing *Doe*, 675 F.3d at 865).

Here, Plaintiffs allege only that the County failed to properly supervise its animal control function or to respond to calls for assistance. They do not make any nonconclusory allegation that the County exercised its authority in any affirmative way. Rather, they claim that the County created the danger by failing to "properly investigate, classify, and manage the dangerous dogs." (Doc. No. 1, p. 14 ¶ 36.) This is insufficient. Even if the state-created danger doctrine were recognized in this circuit, which it is not, Plaintiffs would be required to plausibly allege some affirmative act, rather than mere inaction or omission, that created the complained-of danger. *Cf. Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (plaintiff must identify "an affirmative action, rather than inaction or omission").

Plaintiffs' state-created danger claim (Count 6) is not available in this circuit, and even if it were, it is insufficiently pleaded. The district court should dismiss it.

### 7. *The motion to strike.*

Defendants have moved under Rule 12(f) to strike the photographs of the dogs pictured in

Plaintiffs' complaint. (Doc. No. 12, pp. 18-19.) Federal Rule of Civil Procedure 12(f) provides

that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial,

impertinent, or scandalous matter." Generally, motions to strike are viewed with disfavor and

infrequently granted. *See Augustus v. Board of Public Instruction of Escambia, Fla.*, 306 F.2d

862, 868 (5th Cir. 1962). Here, because all of Plaintiffs' claims should be dismissed, the district

court should deny this motion as moot.

### 8. *Leave to amend?*

Leave to amend need not be granted if amendment would be futile – for example, if an

amended complaint would still fail to state a claim upon which relief may be granted. *See*

*Foman v. Davis*, 371 U.S. 178, 182 (1962) (futility of amendment is adequate justification to

refuse to grant leave to amend). Here, Plaintiffs appear to have pleaded their best case, and thus

it may be futile for Plaintiffs to attempt to amend those claims. But Plaintiffs will have an

opportunity to object to the undersigned's recommendations, and can specify in those objections

how they would amend their complaint to cure the deficiencies noted here. If Plaintiffs are

unable to so explain, the district court should deny leave to amend.

### F. *Conclusion and recommendation.*

The district court should GRANT Defendants' motion to dismiss (Doc. No. 12).

### G. *Notice.*

The Clerk will file this Memorandum and Recommendation and transmit a copy to each

party or counsel. Within 14 days after being served with a copy of the Memorandum and

Recommendation, a party may file with the Clerk and serve on the United States Magistrate

Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), and General Order No. 2002-13, United States District Court for the Southern District of Texas.

A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

SIGNED on November 17, 2025.

Jason B. Libby
United States Magistrate Judge